UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| U.S. SPECIALTY INSURANCE COMPANY | CIVIL ACTION |
| VERSUS | No. 14-279 |
| INTEGRATED PRO SERVICES, LLC ET AL. | SECTION I |

## ORDER AND REASONS

Before the Court is a motion[1] filed by defendants to set aside the entry of default. Plaintiff has filed an opposition.[2] For the following reasons, the motion is **DENIED**.

### BACKGROUND

The above-captioned matter arises out of a construction surety bond that plaintiff, U.S. Specialty Insurance Co. ("U.S. Specialty"), issued on behalf of defendant Integrated Pro Services, LLC ("IPS") in connection with a project for the Department of Veterans Affairs ("VA").[3] The individual defendants executed an indemnity agreement in favor of U.S. Specialty for any payments made on the bond.[4] Shortly after the project began, the VA changed its requirements and "took in excess of 18 months" to approve the change orders submitted by IPS, "causing IPS to suffer severe economic problems on this project."[5] U.S. Specialty alleges that in August 2012, it began receiving claims against the bond as a result of IPS's failure to pay

---

[1] R. Doc. No. 36.
[2] R. Doc. No. 41.
[3] R. Doc. No. 1, ¶¶ 4-13.
[4] R. Doc. No. 1, ¶ 7; R. Doc. No. 1-1, at 6; R. Doc. No. 41, at 2. The individual defendants are John Hess, Julie Hess, Ryan Hess, Amber Hess, Gary Hess, and Karla Hess. R. Doc. No. 1, ¶ 1.
[5] R. Doc. No. 36-2, at 2.

subcontractors and suppliers[6] and that it "has sustained a loss of $841,336.56 in amounts paid" related to these claims.[7]

Prior to litigation, U.S. Specialty and IPS engaged in discussions regarding the claims on the bond.[8] According to defendants, "IPS contacted U.S. Specialty who suggested that IPS hire an attorney out of Washington D.C. to negotiate with the VA regarding an Equitable Adjustment on the Project. IPS has hired the attorney and this process is ongoing."[9] Defendants state that "they believed that the filing of the Complaint by U.S. Specialty was a formal step taken to protect U.S. Specialty's rights but that U.S. Specialty would not take any action against them while negotiations with the VA were ongoing."[10]

Accordingly to U.S. Specialty, "[o]n October 9, 2013, U.S. Specialty made written demand upon IPS and the Individual Defendants to comply with the [indemnity] Agreement and to deposit $600,000.00 in collateral security with U.S. Specialty."[11] U.S. Specialty states that it made another written demand on January 8, 2014, but that defendants "failed to provide the indemnity or collateral required under the Agreement."[12] According to Jill Fisher ("Fisher"), a bond claims attorney who "handle[s] certain bond claims issues for U.S. Specialty,"[13] defendants have been on notice that U.S. Specialty would pursue legal action on its claims since the October 9, 2013 written demand,[14] including multiple warnings in January 2014 that legal action was

---

[6] R. Doc. No. 41-1, at 2.
[7] R. Doc. No. 41, at 2.
[8] R. Doc. No. 36-2, at 2; R. Doc. No. 41, at 3.
[9] R. Doc. No. 36-2, at 2.
[10] R. Doc. No. 36-2, at 2.
[11] R. Doc. No. 41, at 3. The indemnity agreement requires that the indemnitors deposit collateral with U.S. Specialty "upon demand" in the event of a claim or potential claim on the bond. R. Doc. No. 1-1, at 3; R. Doc. No. 1, ¶ 9.
[12] R. Doc. No. 41, at 3.
[13] R. Doc. No. 41-1, at 1.
[14] R. Doc. No. 41-1, at 3

imminent.[15] Fisher states: "After much correspondence and conversations back and forth, I never received anything substantial from the Indemnitor Defendants in response to my request for a repayment plan and collateral. I certainly never agreed that U.S. Specialty would forbear collecting the Indemnitor Defendants'[] debt."[16]

On February 5, 2014, U.S. Specialty filed a complaint in this matter,[17] and all defendants were served by February 18, 2014, with all answers being due no later than March 11, 2014.[18] On March 24, 2014, with none of the defendants having answered the complaint, U.S. Specialty moved for an entry of default as to all defendants,[19] which was granted by the Clerk of Court on March 25, 2014.[20] On March 26, 2014, defendants filed a motion for an extension of time to answer pursuant to Local Rule 7.8,[21] but this Court denied that motion because defendants were in default.[22]

---

[15] *See* R. Doc. No. 41-1, at 4-5.
[16] R. Doc. No. 41-1, at 4.
[17] R. Doc. No. 1.
[18] *See* R. Doc. Nos. 6-12.
[19] R. Doc. Nos. 14-20.
[20] R. Doc. Nos. 23-29.
[21] R. Doc. No. 31.
[22] R. Doc. No. 32. The rule states:
> Upon certification by a moving party that there has been no previous extension of time to plead and that the opposing party has not filed in the record an objection to an extension of time, on ex parte motion and order, the court must allow one extension for a period of 21 days from the time the pleading would otherwise be due. Further extensions will not be granted by stipulation, but only upon motion and order of the court for good cause shown.

LR 7.8.
This Court found that U.S. Specialty "clearly indicated its objection when it filed motions for entry of default against each defendant," and that "Local Rule 7.8 is not a proper basis for setting aside an entry of default." R. Doc. No. 32, at 1. This Court also stated, "To the extent that defendants' motion can be construed as a motion to set aside an entry of default pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, it fails to demonstrate good cause for doing so." R. Doc. No. 32, at 1 (quoting *In re Chinese Manufactured Drywall Prods. Liability Litig.* (*Chinese Drywall II*), 742 F.3d 576, 594 (5th Cir. 2014)).

On April 2, 2014, U.S. Specialty filed a motion for default judgment against defendants, which was originally noticed for submission on April 23, 2014.[23] On April 15, 2014, the last day on which defendants were permitted to file an opposition to the motion for default judgment,[24] defendants filed the instant motion to set aside the entry of default.[25] Defendants also filed a motion to continue the submission date of U.S. Specialty's motion for default judgment,[26] which the Court granted[27] over U.S. Specialty's opposition.[28] Defendants' motion to set aside the entry of default was taken under advisement on May 7, 2014.

## STANDARD OF LAW

Rule 55(c) of the Federal Rules of Civil Procedure provides, "The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). When determining whether good cause has been demonstrated, the Court should consider (1) whether the default was willful, (2) whether setting the default aside would prejudice the adversary, and (3) whether a meritorious defense is presented.[29] *Chinese Drywall*

---

[23] R. Doc. No. 35.
[24] *See* LR 7.5 ("Each party opposing a motion must file and serve a memorandum in opposition to the motion with citations of authorities no later than eight days before the noticed submission date.").
[25] R. Doc. No. 36.
[26] R. Doc. No. 37.
[27] R. Doc. No. 40.
[28] R. Doc. No. 39.
[29] The U.S. Court of Appeals for the Fifth Circuit has "interpreted Rule 60(b)(1) as incorporating the Rule 55 'good-cause' standard applicable to entries of default." *In re OCA*, 551 F.3d at 369; *CJC Holdings*, 979 F.2d at 64. The test used is the same, but "the standard for setting aside a default decree is less rigorous than setting aside a judgment for excusable neglect." *United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5th Cir. 1985); *see In re OCA, Inc.*, 551 F.3d 359, 370 (5th Cir. 2008) (noting that "courts apply essentially the same standard" but that a motion to set aside default "is more readily granted than a motion to set aside a default judgment"); *see also Scott v. Carpanzano*, No. 13-10096, 2014 WL 274493, at *4 n.3 (5th Cir. Jan. 24, 2014). Accordingly, with that caveat, the Court also considers Rule 60(b)(1) cases that discuss these factors, and any references in this order and reasons to setting aside a default judgment should be understood as referring to setting aside an entry of default.

*II*, 742 F.3d at 594 (citing *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000)); *see also CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992). "Of these factors, two can be determinative: a district court may refuse to set aside [an entry of default] if it finds either that the default was willful or that the defendant failed to present a meritorious defense." *Scott v. Carpanzano*, 2014 WL 274493, at *4; *see also In re OCA*, 551 F.3d at 370; *Jenkins & Gilchrist v. Groia & Co.*, 542 F.3d 114, 119-20 (5th Cir. 2008); *Dierschke v. O'Cheskey*, 975 F.2d 181, 183-84 (5th Cir. 1992).

"These factors, however, are neither 'talismanic' nor 'exclusive.'" *Broadwing Comm., Inc. v. Harris*, No. 00-1125, 2000 WL 1059863, at *1 (E.D. La. Aug. 1, 2000) (Vance, J.) (quoting *Dierschke*, 975 F.2d at 183). "Other factors that a court may consider include whether 'the public interest was implicated,' whether 'there was a significant financial loss to the defendant,' and whether 'the defendant acted expeditiously to correct the default.'" *Id.*; *see also Indigo Am., Inc. v. Big Impressions, LLC*, 597 F.3d 1, 3 (1st Cir. 2010).[30]

Federal courts possess broad discretion when determining whether to set aside defaults, as defaults are generally disfavored and federal courts prefer to resolve disputes on the merits. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). Defaults are extreme sanctions reserved for rare occasions, and doubts as to whether or not a defendant has shown good cause should be resolved in favor of setting aside the default. *See Lindsey*, 161 F.3d at 893.

---

[30] Defendants cite *Indigo* for the proposition that "[t]he court may consider the nature of defendants['] explanation for the default, the good faith of the parties, the amount of money involved, and the promptness of the defendants['] motion to set [aside] the entry of default." R. Doc. No. 36-2, at 2. *Indigo* is the only authority cited in defendants' motion.

**DISCUSSION**

U.S. Specialty makes no claim of prejudice, and the Court finds none because "mere delay does not alone constitute prejudice." *Lacy*, 227 F.3d at 293. However, U.S. Specialty contends that the Court should deny defendants' motion because their default was willful and because they have not asserted any meritorious defenses. The Court examines each argument.

**A.     Willfulness**

U.S. Specialty argues that defendants' "failure to answer was willful and that failure indicates a complete lack of good cause," and that "[a]ny plea of ignorance is unconvincing."[31] Defendants state that "they believed that the filing of the Complaint by U.S. Specialty was a formal step taken to protect U.S. Specialty's rights but that U.S. Specialty would not take any action against them while negotiations with the VA were ongoing."[32]

If U.S. Specialty had represented that it would file a complaint as a mere "formal step," good cause might be present. For example, in *Lambert v. Board of Commissioners of the Orleans Levee District*, No. 05-5931, 2006 WL 1581262 (E.D. La. June 7, 2006) (Vance, J.), the court credited "counsel's assertion that he believed that the parties had agreed to an informal extension of the time to answer the complaint." *Id.* at *2. However, this Court cannot similarly credit defendants' assertion that "they believed that the filing of the Complaint by U.S. Specialty was a formal step" because it has not presented any evidence to support such an assertion.[33] To the contrary, Fisher's unrebutted statements in her affidavit establish that defendants were warned numerous times that U.S. Specialty would pursue its claims and proceed to litigation.[34]

---

[31] R. Doc. No. 41, at 7.
[32] R. Doc. No. 36-2, at 2.
[33] R. Doc. No. 36-2, at 2.
[34] *See* R. Doc. No. 41-1, at 3-5.

Defendants' unsubstantiated belief that the above-captioned litigation represented merely a "formal step" cannot justify their willful failure to answer.

Furthermore, defendants' choice not to answer or request an extension of time to answer "because they believed that they were cooperating with U.S. Specialty in [an] attempt to get payments from the VA, which would benefit IPS and U.S. Specialty,"[35] cannot constitute good cause because the consequences of a failure to respond were clearly explained in the summons issued to each defendant:

> A lawsuit has been filed against you.
> Within 21 days after service of this summons on you (not counting the day you received it) . . . you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. . . . .
> If you fail to respond, *judgment by default will be entered against you for the relief demanded in the complaint*. You also must file your answer or motion with the court.[36]

Accordingly, the Court affords no weight to defendants' claim that they "did not understand the importance of responding while they were still working toward a solution with the VA."[37]

Because defendants' default was willful and intentional, the Court finds there is no good cause to set aside the entry of default. *See Scott*, 2014 WL 274493, at *4; *In re OCA*, 551 F.3d at 370; *Dierschke*, 975 F.2d at 183-84.

### B. Meritorious Defense

U.S. Specialty contends that "[a]ny continued litigation of this case by IPS and the Individual Defendants if the entries of default are set aside is futile based on the complete absence of a defense to U.S. Specialty's claims."[38] "Even in the absence of willful neglect by the defendant or unfair prejudice to the plaintiff, a district court may have the discretion not to upset

---

[35] R. Doc. No. 36-2, at 2.
[36] *See, e.g.*, R. Doc. No. 6, at 1 (emphasis added).
[37] R. Doc. No. 36-2, at 3.
[38] R. Doc. No. 41, at 7.

[an entry of default] if the defendant fails to present a meritorious defense sufficient to support a finding on the merits for the defaulting party." *Lacy*, 227 F.3d at 293. "This generally requires that the defendant provide 'definite factual allegations, as opposed to mere legal conclusions, in support of her defense.'" *Scott*, 2014 WL 274493, at *6 (quoting *Jenkins & Gilchrist*, 542 F.3d at 122). "In determining whether a meritorious defense exists, the underlying concern is 'whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'" *Id.* (quoting *In re OCA*, 551 F.3d at 373).

Defendants have made no attempt to establish that they have a meritorious defense, either by describing a defense in their motion or by filing a proposed answer. *See Jefferson v. La. Dep't of Public Safety & Corrections*, 401 F. App'x 927, 929 (5th Cir. 2010) ("A proposed answer can usefully detail the defaulting party's allegedly meritorious defenses. Those points will support the movant's argument that there is good cause to set aside the entry of default."). Defendants have not refuted their liability or identified any potential defense, nor have they set forth any factual allegations that would support any defense. *See Scott*, 2014 WL 274493, at *6. The indemnity agreement unambiguously requires the individual defendants to indemnify U.S. Specialty,[39] and defendants have not given this Court any reason to believe that "the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Id.* (internal quotation marks omitted). Because defendants have not presented a meritorious defense, the Court finds there is no good cause to set aside the entry of default.

---

[39] R. Doc. No. 1-1, at 1 ("In consideration of the execution and delivery by the Surety [U.S. Specialty] of a Bond or any Bonds on behalf of the Principal [IPS], the Undersigned [individual defendants] agree to indemnify and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind or nature together with interest thereon at the maximum rate allowed by law, which arise by reason of, or in consequences of, the execution by the Surety of any Bond on behalf of the Principal . . . .").

### C. Other Factors

The Court finds that the default was willful and that defendants have not presented a meritorious defense, each of which is independently a sufficient and determinative finding that permits the Court to refuse to set aside the entry of default. Accordingly, the Court need not address any other factors. *See Scott*, 2014 WL 274493, at *4; *In re OCA*, 551 F.3d at 370; *Dierschke*, 975 F.2d at 184 ("We conclude that when the court finds an intentional failure of responsive pleadings there need be no other finding.").

## CONCLUSION

Although the Court recognizes that refusing to set aside an entry of default is an extreme sanction reserved for rare occasions, this case is such an occasion. *See Lindsey,* 161 F.3d at 893. Defendants willfully and intentionally failed to respond to the complaint without good cause for doing so, and defendants have not disputed their liability to plaintiff, much less presented any meritorious defense. Accordingly,

**IT IS ORDERED** that the motion to set aside the entry of default is **DENIED**.

New Orleans, Louisiana, May 12, 2014.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**